**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| IN RE: | CASE NO.: |
| CLIFTON CRAIG MCALLISTER | 13-04160-8-SWH |
| DEBTOR. | CHAPTER 13 |

**MOTION FOR APPROVAL OF LOAN MODIFICATION AGREEMENT**

NOW COMES the Debtor, by and through counsel undersigned, and respectfully moves the Court for approval of a loan modification agreement upon the terms as set forth herein. In support of this Motion, the Debtor shows as follows:

1. Clifton Craig McAllister filed the above-captioned Chapter 13 case on July 2, 2013.

2. Seterus, Inc. is presently the servicing agent for creditor, Federal National Mortgage Association ("Fannie Mae"), with respect to a note and deed of trust as set forth in the proof of claim (Court Claim No. 4) initially filed in this case by JP Morgan Chase Bank, N.A. ("JP Morgan"). JP Morgan transferred the claim to Fannie Mae pursuant to a Transfer of Claim filed in this case on or about September 19, 2014. The deed of trust grants a security interest in the Debtor's real property occupied as his residence and located at 1022 Dock Street (also known as 101 Gores Row), Wilmington, NC 28401.

3. In accordance with the Debtor's Amended Fourth Motion to Modify Plan after Confirmation, the Court entered an Order approving the Amended Motion on or about April 2, 2018 and the plan modification authorized surrender of the residence

to the creditor. Since that plan modification, the creditor has offered, and Mr. McAllister has completed, a trial payment plan and the creditor has offered the Debtor the Loan Modification Agreement, a redacted copy of which is attached hereto as Exhibit 1.

WHEREFORE, the Debtor respectfully moves the Court as follows:

1). For approval of the Loan Modification Agreement as set forth herein;

2). For authorization and approval for the Debtor and Seterus, Inc., as the authorized signer for the creditor, to execute the Loan Modification Agreement;

3). For the Court to retain jurisdiction regarding enforcement of the Loan Modification Agreement; and

4). For such other relief as the Court shall deem appropriate.

This the 6th day of September, 2018.

FINANCIAL PROTECTION LAW CENTER

By: /s/ Maria D. McIntyre
    Maria D. McIntyre
    P.O. Box 390
    Wilmington, NC 28402
    (910) 442-1010 Telephone
    (910) 442-1011 Facsimile
    maria@financialprotectionlawcenter.org
    *Attorneys for Debtor*

Collateral Address: 101 GORES ROW, WILMINGTON NC 28401-0000

Loan Number: ███  Prepared by Servicer: Seterus, Inc., Seterus NMLS ID Number: ███, Investor Loan Number: ███

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 27th day of August, 2018, between MCALLISTER, CRAIG ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated August 30, 2006, of the County Records of New Hanover and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

    101 GORES ROW, WILMINGTON NC 28401-0000

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of October 1, 2018, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $85,278.33, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.625%, from September 1, 2018. Borrower promises to make monthly payments of principal and interest of U.S. $336.78, beginning on the 1st day of October, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.625% will remain in effect until principal and interest are paid in full. If on September 1, 2058 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $169.40 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing October 1, 2018.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1 of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and
   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:
   (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.
   (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (e) All administration and processing costs incurred by Lender in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Lender, unless otherwise stipulated.
   (f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of

such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

> Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

9. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

    Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

    Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____    _____
Seterus, Inc.   Authorized Signer         Date


_____    _____
MCALLISTER, CRAIG                          Date

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:                                                                     CASE NO.:

CLIFTON CRAIG MCALLISTER                  13-04160-8-SWH

         DEBTOR.                                        CHAPTER 13

NOTICE OF MOTION
FOR APPROVAL OF LOAN MODIFICATION AGREEMENT

       **NOTICE IS HEREBY GIVEN** of the Motion for Approval of Loan Modification Agreement filed simultaneously herewith in the above-captioned case by the Debtor, a copy of which motion is attached hereto; and

       <u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

       If you do not want the Court to grant the relief sought in Motion, or if you want the Court to consider your views on the Motion, then on or before <u>September 24, 2018</u>, unless otherwise ordered, you or your attorney must file with the Court, pursuant to Local Rule 9013-1 and 9014- 1, a written response, an answer explaining your position, and a request for hearing at: U.S. Bankruptcy Court, P.O. Box 791, Raleigh, NC 27602. (As a Filing User of the Court's Electronic Case Filing System you may be required to electronically file a response). If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above. You must also mail a copy to the attorney whose name appears at the bottom of this notice and to other parties in interest.

       If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the Motion at a date, time and place to be later set and all parties will be notified accordingly. Any party filing a response to the Motion shall appear at any hearing in support of the objection or may be assessed with costs.

       If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

       Dated: September 6, 2018      FINANCIAL PROTECTION LAW CENTER

                                                           By:     <u>/s/ Maria D. McIntyre</u>

                    Maria D. McIntyre
                    N.C. State Bar No. 24407
                    P.O. Box 390
                    Wilmington, NC 28402
                    Telephone: (910) 442-1010
                    Facsimile:  (910) 442-1011
                    maria@financialprotectionlawcenter.org
                    *Attorneys for Debtor*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing

MOTION TO APPROVE LOAN MODIFICATION AGREEMENT
AND
NOTICE OF MOTION

in the above captioned case was this day served upon the below named persons as follows:

By electronic service through CM/ECF:

    Jody A. Bledsoe, III
    *Chapter 13 Trustee*

    Sean M. Corcoran
    Melissa Swaby
    Brock & Scott, PLLC
    *Counsel for Federal National Mortgage Association*

By mailing, postage prepaid, first class mail, of a copy of such instrument(s) to such persons, parties and/or counsel at the address shown below:

| | |
|---|---|
| Clifton Craig McAllister | Sean M. Corcoran |
| 1022 Dock Street | Melissa Swaby |
| Wilmington, NC 28401 | Brock & Scott, PLLC |
| | 8757 Red Oak Blvd., Suite 150 |
| | Charlotte, NC 28217 |

    FINANCIAL PROTECTION LAW CENTER    Date:  September 6, 2018

    By:    /s/ Maria D. McIntyre
            Maria D. McIntyre, Attorneys for Debtor